UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

SHAWN D. VAUGHN                                                            CASE NO. 17-3414-DDD
         DEBTOR                                                                       CHAPTER 13

## MEMORANDUM OPINION

Standing chapter 13 trustee James L. Henley, Jr. moves to reopen[1] debtor Shawn D. Vaughn's ("Vaughn" or "debtor") chapter 13 case which was closed September 4, 2020,[2] after her May 12, 2020 discharge.[3] Cory Ferraez, debtor's one-time special counsel, objects to the motion to reopen.[4]

## I. FACTS

### A. The Debtor's Several Lawyers

This dispute has its genesis in events preceding Vaughn's bankruptcy filing, when she hired Schwartz and Associates, P.A. ("Schwartz firm") to pursue claims for injuries she suffered in a motor vehicle accident. She later substituted Cory Ferraez ("Ferraez") and the firm of McHard, Anderson & Associates, PLLC ("McHard firm") as her personal injury lawyers.

---

[1] Motion to Reopen, P-128.

[2] Final Decree/Order Closing Case P-126; Ferraez Exhibit 24.

[3] Order of Discharge, P-122.

[4] The court also took up at the evidentiary hearing two related motions: Cory Ferraez's motion to quash subpoena of Jackson Neurosurgery Clinic, P-188; and his motion to disqualify Holmes, McLelland & Ferraez, PLLC, as counsel for the debtor and to strike its joinder and witness list, P-158. The only matter pending in the court is the chapter 13 trustee's motion to reopen the bankruptcy case. The subpoena that Cory Ferraez sought to quash requested production of documents after the evidentiary hearing on the motion to reopen, so necessarily was not related to the motion. Accordingly, the motion to quash was granted. The motion to disqualify Holmes, McLelland & Ferraez, PLLC, was ruled moot because the firm lacked standing to join the trustee's motion.

Ferraez later left the McHard firm and joined Holmes, McLelland & Ferraez, PLLC ("Holmes firm").

Vaughn filed chapter 13 on September 20, 2017, and scheduled the personal injury claim as an asset of her bankruptcy estate under 11 U.S.C. § 541.[5]  Vaughn then signed a February 15, 2018 agreement with the Holmes firm providing for a contingent fee of forty percent (40%) of any recovery on the personal injury claim, plus expenses.[6]  The contract acknowledged that the debtor may have been obligated to pay charging liens of previous law firms.[7]  The bankruptcy court later approved the debtor's engagement of Ferraez as special counsel although its order does not mention the Holmes firm.[8]

### B. Cory Ferraez's Dispute with the McHard Firm

Law firm partings sometimes trigger disputes and Ferraez's February 2018 departure from the McHard firm was no different.  The McHard firm sued Ferraez on May 29, 2018,[9] but the parties settled their dispute in August 2019 with Ferraez agreeing to pay the McHard firm a

---

[5] Schedule A/B, P-4, p. 5; Ferraez Exhibit 1.

[6] The Application for Employment identifies Cory Ferraez as plaintiff's counsel. Application for Employment of Attorney, P-45; Ferraez Exhibit 2. However, for reasons not explained at the evidentiary hearing, the Contract for Employment identifies Jace Ferraez rather than Cory Ferraez as plaintiff's counsel.  Contract for Employment, P-45, exhibit 1; Ferraez Exhibit 2, exhibit A.

[7] Contract for Employment, Exhibit A to Application to Employ Special Counsel, P-45; Ferraez Exhibit 2. Transcript of May 20, 2021 hearing, pp. 39-40.

[8] Order Approving Application for Employment, P-48; Ferraez Exhibit 4.  The application to employ special counsel, P-45, requests the employment of Cory Ferraez and the Holmes firm but the order granting the application provides for employment only of Cory Ferraez, and not the firm.

[9] *McHard, McHard, Anderson & Associates, PLLC v. Ferraez*, Case no. 18-cv-00046-PH, Circuit Court of Lamar County, Mississippi; Ferraez Exhibit 25.

portion of fees in some of his cases. He specifically agreed to pay the McHard firm twenty percent (20%) of attorney's fees he collected on the debtor's personal injury claim.[10]

### C. Settlement of the Debtor's Claim and Related Bankruptcy Pleadings

Ferraez settled Vaughn's claims in May 2020 for $650,000 and as debtor's special counsel, sought bankruptcy court approval of the compromise.[11] Ferraez at the same time applied for payment of attorneys' fees, expenses and liens in the following amounts:

- $260,000 in attorney's fees and $5,081.33 in expenses for Ferraez;

- $52,000 lien claim of the McHard firm;

- $1,689 lien claim of Action Chiropractic, Inc.;

- $4,764.16 lien claim of the Schwartz firm;

- $172,000.38 lien claim of HMR Funding, LLC; and

- $5,583.78 lien asserted by Helping Hands Capital, LLC.[12]

The chapter 13 trustee objected to paying HMR Funding, LLC, and Helping Hands Capital, LLC, based on inadequate documentation for their liens.[13] He did not object to the proposed payments to the McHard firm or to Ferraez; indeed, the trustee first challenged those payments only in his motion to reopen.

---

[10] Settlement Agreement and Mutual Release dated August 16, 2019, Trustee Exhibit 24.

[11] Ferraez presumably sought approval of the settlement under Fed. R. Bankr. P. 9019. Application for Approval of Settlement, P-75; Ferraez Exhibit 5.

[12] Application for Approval of Attorney's Fees, Expenses and Liens, P-77; Ferraez Exhibit 6.

[13] Trustee's Objection to Debtor's Application for Approval of Attorney's Fees, Expenses and Liens, P-85; Ferraez Exhibit 10. *See also* Trustee's Amended Objection, P-90; Ferraez Exhibit 12. The trustee's original objection sought more proof on the liens of HMR Funding, LLC, and Helping Hands Capital, LLC. The amended objection also alleges that those liens were post-petition loans made without court approval.

The debtor signed an affidavit supporting the application for approval of the settlement and the application for approval of attorneys' fees, expenses and liens.[14]  Her affidavit agreed to disbursement of settlement funds in the amounts and to the parties identified in the applications.[15]

The bankruptcy court approved the settlement after a March 30, 2020 hearing, though it disallowed the lien claims of HMR Funding, LLC, and Helping Hands Capital, LLC, as unauthorized postpetition loans.[16]  The same day, the court in a separate order authorized the chapter 13 trustee to distribute from the settlement funds:

- $260,000 in attorney's fees and $5,081.33 in expenses to Ferraez;
- $52,000 to the McHard firm;
- $1,689 to Action Chiropractic, Inc.; and
- 4,764.16 to the Schwartz firm.[17]

The trustee distributed funds as the court order directed, including $265,081.33 to Ferraez and $52,000 to the McHard firm.[18]

---

[14] March 25, 2020 Affidavit, Exhibit A to Debtor's Response to Trustee's Amended Objection to Application for Approval of Payment of Attorney's Fees, Expenses and Liens, P-91; Ferraez Exhibit 13.

[15] *Id.*

[16] Order Granting Application for Approval of Settlement, P-99; Ferraez Exhibit 16.

[17] Order Authorizing Application for Approval of Attorney's Fees, Expenses and Liens, P-100; Ferraez Exhibit 17. The order recited that payments to the McHard firm, Action Chiropractic, Inc., and the Schwartz firm were based on the parties' asserted liens.

[18] Trustee's Final Report and Account, P-125; Ferraez Exhibit 23.

### D. Outcome of the Debtor's Bankruptcy Case

The chapter 13 trustee paid all creditors' allowed claims from the settlement proceeds, as well as his statutory commission[19] and other expenses of administration, as the debtor's chapter 13 plan provided.[20] The debtor received a chapter 13 discharge on May 12, 2020.[21] The court issued a final decree and closed her case on September 4, 2020.[22]

### E. The Holmes Firm and the Debtor

Some months later, after a dispute between Ferraez and the Holmes firm over his handling of cases and fees,[23] the Holmes firm contacted the debtor to report that Ferraez diverted $52,000 that Vaughn should have received and paid it to the McHard firm. The Holmes firm paid Vaughn $52,000 from its trust account and around the same time asked her to sign an affidavit it prepared.[24] Vaughn's affidavit recites that she previously was unaware of Cory Ferraez's settlement with the McHard firm and "now realize[s] that the $52,000 debt … was actually his debt he owed under his settlement with them and that he stole my money to pay his debt."[25]

---

[19] 28 U.S.C. § 586(e).

[20] Transcript of May 20, 2021 hearing, p. 12, ll. 10-12.

[21] Order of Discharge, P-122.

[22] Final Decree/Order Closing Case, P-126; Ferraez Exhibit 24.

[23] The Holmes firm and Cory Ferraez began arguing in October 2020 over his handling of cases and the resulting fees, and Ferraez left the firm in January 2021. Transcript of May 20, 2021 hearing, p. 105, ll. 5-10.

[24] February 8, 2021 affidavit of Vaughn, Trustee Exhibit 25.

[25] *Id.*

### F. The Trustee's Motion to Reopen

The trustee moved to reopen the case in March 2021. His motion alleged that Ferraez had committed fraud on the bankruptcy court by misrepresenting that the McHard firm had a $52,000 charging lien on the settlement proceeds.[26] The trustee requested that the case be reopened to "address any issues related to the alleged fraudulent lien and related payments."[27]

### G. Cory Ferraez's Objection to Reopening

Ferraez argues that there is no cause to reopen the case on the grounds the chapter 13 trustee urged because he did not misrepresent anything to the bankruptcy court or the parties. He maintains that he disclosed to the debtor, trustee and the court all relevant information about Vaughn's debt to the McHard firm. He also contends that all issues surrounding liability for the $52,000 paid to the McHard firm from the settlement are being litigated in a state court.[28] Indeed, the Holmes firm's state court counter-claims allege that Ferraez fraudulently misrepresented that the debtor was liable to the McHard firm for $52,000 when Cory Ferraez himself owed the money to the McHard firm. The Holmes firm also accuses Ferraez of fraudulently advising it that the debtor had agreed to pay the $52,000.[29]

---

[26] Motion to Reopen, P-128. The court later denied the Holmes firm's motion to join in the trustee's motion. Joinder to the Trustee's Motion to Reopen, P-153.

[27] Motion to Reopen, P-128, ¶ 5.

[28] *See* Complaint in *Ferraez Lamar Holdings, LLC, et al v. Holmes, McLelland & Ferraez, PLLC*, *et al*, case no. 21-cv-00131, Chancery Court of Forrest County, Mississippi; Ferraez Exhibit 26; and Defendants' Combined Answer, Affirmative Defenses, Counter-Claims and Third-Party Complaint; Ferraez Exhibit 27.

[29] Defendants' Combined Answer, Affirmative Defenses, Counter-Claims and Third-Party Complaint; Ferraez Exhibit 27, ¶ 41.

## II. ANALYSIS

### A. Timeliness of the Trustee's Motion

The trustee's motion to reopen rests on Fed. R. Civ. P. 60, 11 U.S.C. § 350 and Fed. R. Bankr. P. 5010.[30] Fed. R. Civ. P. 60(b), made applicable by Fed. R. Bankr. P. 9024, allows relief from a judgment or order on specific grounds including fraud.

Ferraez's contention that the trustee's motion to reopen is untimely is unfounded. Fed. R. Bankr. P. 9024 itself specifies that "a motion to reopen a case under the Code … is not subject to the one-year limitation prescribed in [Fed. R. Civ. P.] 60(c)."

### B. Merits of the Trustee's Motion

Bankruptcy Code section 350(b) provides for reopening closed bankruptcy cases "to administer assets, to accord relief to the debtor, or for other cause."[31] Courts are given broad discretion to determine whether facts support *cause* for reopening:

> Reopening "for other cause" is within the discretion of the bankruptcy court, depending on the circumstances of the particular case and in accordance with "the equitable nature of all bankruptcy court proceedings." *Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014, 1018 (5th Cir. 1991). "The longer the time between the closing of the estate and the motion to reopen, however, the more compelling the reason for reopening the estate should be." *Id.* The burden is on the movant to establish cause.[32]

---

[30] Though the trustee did not rely on Fed. R. Bankr. P. 9023, Ferraez argued that it is inapplicable. Fed. R. Bankr. P. 9023 is inapplicable because it provides that "[a] motion for new trial or to alter or amend a judgment shall be filed … no later than 14 days after entry of judgment." The trustee's motion to reopen was filed more than six months after the case was closed.

[31] Fed. R. Bankr. P. 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."

[32] In re Alliance Consulting Grp. LLC, 588 B.R. 169, 174 (Bankr. S.D. Miss 2018), aff'd sub nom. Plant Materials, LLC v. Alliance Consulting Grp., LLC, 596 B.R. 851 (S.D. Miss. 2019).

The trustee argues that Ferraez's obtaining a court order directing payment of $52,000 of the settlement funds to the McHard firm rather than to the debtor is fraud on the court that justifies reopening the case under section 350 and Fed. R. Civ. P. 60.

"A bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders.'"[33]   Thus if the court incorrectly ordered the chapter 13 trustee to distribute estate funds to the McHard firm, it retains jurisdiction to correct it.  But "[h]aving jurisdiction does not necessarily require its exercise.  Section 1334 of title 28 empowers bankruptcy courts to abstain from presiding over matters."[34]  Section 1334(c)(1) provides

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with the State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

So even if reopening the case were appropriate, nothing suggests that the court should entertain the issues the trustee suggests.

A bankruptcy court may raise the issue of permissive abstention on its own motion.[35] The relevant factors are

(1)   the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2)   extent to which state law issues predominate over bankruptcy issues;

(3)   difficult or unsettled nature of applicable law;

(4)   presence of related proceeding commenced in state court or other non-bankruptcy proceeding;

---

[33] *Galaz v. Katona (In Matter of Galaz)*, 841 F.3d 316, 322 (5th Cir. 2016) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009)).

[34] *In re Friede Goldman Halter, Inc.,* 602 B.R. 307, 313 (Bankr. M.D.La. 2019).

[35] *Genesis Producing Co., L.P. v. Smith Big Oil Corp.,* 2014 WL 3897831, *3 (S.D. Tex. 2014) (*citing In re Doctor Hosp. 1997, L.P.,* 351 B.R. 813, 847 (Bankr. S.D. Tex. 2006)).

(5)    jurisdictional basis, if any, other than § 1334(c);

(6)    degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7)    the substance rather than the form of an asserted core proceeding;

(8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)    the burden of the ... court's docket;

(10)    the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial;

(12)    the presence in the proceeding of non-debtor parties;

(13)    comity; and

(14)    the possibility of prejudice to other parties in the action.[36]

All of Vaughn's creditors holding allowed claims have been paid, along with the chapter 13 trustee. The Holmes firm has made Vaughn largely whole.[37] The work of the bankruptcy court was completed with the debtor's discharge and the trustee's final account. Whether Vaughn was entitled to the $52,000 the McHard firm received, and if so, who is liable to whom for that sum, is not a matter for this court to determine.[38] The issues the trustee's motion presents more

---

[36] *Shoemaker v. Batesville Hosp. Management, Inc.,* 2008 WL 294551 (N.D. Miss. January 31, 2008) (citing *Davis v. Life Investors Ins. Co. of America,* 282 B.R. 186, n. 7 (S.D. Miss. May 30, 2002)). *See also Searcy v. Knotsman,* 155 B.R. 699, 710 (S.D. Miss. 1993).

[37] This opinion does not consider or address whether Vaughn may have a claim against anyone in connection with the events it discusses.

[38] The debtor signed a contract with Ferraez acknowledging that she may have been obligated to pay charging liens though on cross examination she insisted that she did not think she owed any debts of that kind. Transcript of May 20, 2021 hearing, pp. 39-40, 41. The debtor also admitted that she was aware that Ferraez had filed an application for approval of the compromise and for approval of payment of fees and expenses of the litigation. Transcript of May 20, 2021 hearing, pp. 44, 47. She acknowledged receiving copies of the orders granting both applications—including the order specifically providing for payment to the McHard firm—and discussing them with her bankruptcy lawyer, Meridith Drummond. Transcript of May 20, 2021 hearing, pp. 50-51, 61-62. She also signed an affidavit supporting the applications and agreeing to disbursement of settlement funds as provided in the applications if the court approved the settlement and fees. March 25, 2020 Affidavit, Exhibit A to Debtor's

properly are for the state court to resolve, especially given that non-debtors who were not parties to the bankruptcy case—the Holmes and McHard firms—potentially have an interest in that dispute.

The Holmes firm and Ferraez were litigating in the Chancery Court before the chapter 13 trustee moved to reopen this case, making this matter ripe for abstention. State law will govern whether Ferraez should have absorbed the $52,000 payment at issue from his share of the settlement proceeds in lieu of paying the McHard firm based on an alleged charging lien.[39] Reopening the case is not necessary to afford relief to the debtor or any creditor and may in fact impede a swift resolution of the issues that are already joined in state court. These factors weigh heavily in favor of abstention.

The chapter 13 trustee maintains that the case must be reopened for the debtor to satisfy her duty under section 521(a)(l) to disclose all assets, including causes of action.[40] For reasons that are not apparent from the evidence, the chapter 13 trustee expressed his concern that the debtor might be judicially estopped from pursuing a claim associated with the attorney fee

---

Response to Trustee's Amended Objection to Application for Approval of Payment of Attorney's Fees, Expenses and Liens, P-91; Ferraez Exhibit 13.

[39] The McHard firm did not file a proof of claim in the Vaughn bankruptcy. Paul Anderson of the McHard firm denied that his firm had a charging lien on the debtor's settlement and insisted that Ferraez was personally obligated to pay twenty percent (20%) of any fee he received from the Vaughn settlement. Transcript of May 20, 2021 hearing, p. 66, ll.16-25. However, Anderson did not convincingly explain his firm's retention of $52,000 the chapter 13 trustee paid to the firm from the settlement.

[40] *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207-208 (5th Cir. 1999).

payment.[41] He relies on *In re Coastal Plains*,[42] where the Fifth Circuit held that a debtor failing to disclose a known cause of action was judicially estopped from later bringing the claim.[43]

But *Coastal Plains* would not recognize judicial estoppel if a debtor's failure to disclose a claim was "inadvertent."[44] "[T]he debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment."[45]

The evidence supports a finding that the debtor lacked knowledge of any potential claim against Ferraez until months after her creditors had been paid, she had been discharged and her case closed.[46] Moreover, no evidence suggested that the debtor had a motive to conceal a potential claim against Ferraez before Mary Lee Holmes of the Holmes firm suggested to her than one existed. Her creditors and the trustee had been paid in full and the debtor had been discharged. *See Kane v. National Union Fire Insurance Co.*,[47] where the Fifth Circuit clarified

---

[41] The debtor's bankruptcy counsel was Edwin Woods, Jr. and Meridith Drummond. The evidence did not reveal the reason for the trustee's concern about the debtor's potential future claim that has no bearing on the chapter 13 case or payments to creditors and is not within the court's jurisdiction. *Wood v. Wood (Matter of Wood),* 825 F.2d 90, 92 (5th Cir. 1987) (finding under 28 U.S.C. § 1334 that bankruptcy courts have jurisdiction over proceedings "arising in or related to cases under title 11").

[42] *Id*.

[43] *Id.* at 210.

[44] *Id*.

[45] *Id*. (emphasis in original) (citations omitted).

[46] Vaughn was discharged on May 12, 2020. Marcus McLelland of the Holmes firm testified that the firm only learned in late October 2020 that Ferraez had settled the debtor's personal injury claim and the bankruptcy court had approved fees. Transcript of May 20, 2021 hearing, p. 92, ll. 4-6. McLelland testified that Ferraez deposited the $265,000 he received into his personal bank account rather than the law firm's account. Mary Lee Holmes afterward contacted the debtor to tell her that she believed that Ferraez had caused $52,000 of the debtor's funds to be paid to the McHard firm. Transcript of May 20, 2021 hearing, p. 35, ll. 14-25; p. 93, ll. 22-23; p. 105, ll. 8-14; p. 52, ll. 14-15.

[47] *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380 (5th Cir. 2008).

that it has only "applied judicial estoppel to bar an unscheduled claim when others, the debtors or other insiders, would benefit to the detriment of creditors."[48]

## III.  CONCLUSION

Reopening the bankruptcy case would serve no compelling purpose.  It would waste judicial resources for no apparent benefit or reason because litigation over liability for the $52,000 paid from the settlement is pending in state court.  As Judge Samson of this court held in *In re Alliance Consulting Grp. LLC*,[49] "It is an abuse of discretion to reopen a case for a purpose that is futile."[50]

The motion to reopen is DENIED.

Baton Rouge, Louisiana, July 22, 2021.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[48] *Id.* at 386 (citing *Superior Crewboats v. Primary P & I Underwriters (In re Superior Crewboats, Inc.),* 374 330 (5th Cir. 2004) and *Coastal Plains*, 179 F.3d 197)).

[49] *In re Alliance Consulting Grp. LLC*, 588 B.R. 169 (Bankr. S.D. Miss. 2018).

[50] 588 B.R. at 174 (citing *Chase Auto Finance v. Kinion (In re Kinion)*, 207 F.3d 751, 757 (5th Cir. 2000)).